# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 12-12115
  Chapter 13
JONATHAN F. STRENGTH,

    Debtor.

## MEMORANDUM OPINION

    Kerry Ann Brock (hereinafter "Brock") objects to the discharge of her claim against the debtor, Jonathan F. Strength (hereinafter "Strength"). That claim represents the first and second mortgage indebtedness on her home at 108 Juniper Court, Dothan, Alabama. Brock, who is Strength's former spouse, contends that her claim arises from the parties' divorce and is not dischargeable because the claim is in the nature of alimony, maintenance, and support.[1]

    Strength disputes this contention, maintaining that Brock's claim is in the nature of a property settlement, and therefore is dischargeable in a chapter 13 case.

    On February 6, 2013, an evidentiary hearing was held on Brock's motion. At the hearing, Strength was represented by his counsel, Rafael Gil, III. Brock was represented by her attorney, M. Hampton Baxley. For the reasons stated herein, the court finds that Brock's claim is in the nature of a property settlement, hence her motion objecting to the discharge of her claim will be denied, in part and

---

[1]In her objection, Brock asserts that Strength is a "highly compensated medical professional." Because of Strength's alleged high income, Brock's counsel, at trial, raised the issue of "substantial abuse" as a reason why Brock's claim should not be discharged. However, the statute dealing with substantial abuse in bankruptcy, 11 U.S.C. § 707, applies only to case filed under chapter 7 of title 11. Even there, the statute results in the dismissal or conversion of an offending case, not the denial of discharge.
    11 U.S.C. § 1328 controls as to which debts are not dischargeable in a chapter 13 case. Neither does that section make "substantial abuse" a ground for denial of the discharge of a particular debt. Hence, the court will confine its consideration of this matter to the sole issue of whether Brock's claim is in the nature of alimony, maintenance, or support, or whether it is in the nature of a property settlement.

granted, in part.[2]

## Jurisdiction

The court's jurisdiction in this disputed matter arises from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because this matter is one to determine the dischargeability of a particular debt, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I) thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Findings of Fact

I. The Divorce

Brock and Strength's marriage of just over two-years came to an end on October 18, 2010 when their divorce became final in the Circuit Court of Dale County, Alabama (hereinafter "Circuit Court"). The final judgment of divorce incorporated the parties' stipulation. That stipulation contained, *inter alia*, the following provision:

> 2. **Property Division.** The wife shall receive all right, title and interest in and to the home located at 108 Juniper Court, Dothan, Alabama and husband shall pay the mortgage indebtedness to Chase and hold wife harmless; and an equity line of credit held by CB&T Bank and the husband shall pay the indebtedness to CB&T Bank and hold wife harmless. The wife shall receive all right, title and interest to the property located at Lake Martin waterfront lot owned by the parties. The wife is to retain possession and title to the 2010 BMW 550i, 2000 Jeep Wrangler, 1993 Country LWB Range Rover, two (2) Yamaha jet skis & trailer and the 2008 Deck 22 ft. boat. All pets/horses remain property of the wife. All bank accounts have been divided to the parties' mutual satisfaction. All household furnishings, goods and personal clothing, items and belongings have been divided

---

[2]Brock's objection to the discharge of her claim comes in the form of a motion. However, a proceeding to determine the dischargeability of a particular debt should have been brought as an adversary proceeding. *See* F.R.B.P. 7001(6). Yet, Strength has not complained of the deprivation of any heightened procedural protections afforded by an adversary proceeding, therefore the court deems that issue waived.

to the parties' mutual satisfaction. Any property of the parties not
disposed of by this stipulation shall be the property of the wife.

*See* Creditor Exhibit 1.

Strength, however, testified that the divorce was a sham. According to Strength, the entire saga began with the death of his brother. At the time of his death, Strength's brother owned several pieces of real estate in the Birmingham, Alabama area. Strength, who was the executor of his brother's decedent estate, tried to sell those properties, but due to a depressed real estate market, he was unable to do so for an amount that would satisfy creditor claims.

At this point, Strength testified that his wife, who allegedly had consulted with an attorney, approached him with a plan. She posited that Strength's own assets could be placed in jeopardy by claims on his deceased brother's estate. Therefore, Brock proposed that Strength transfer all his assets to her in a divorce proceeding and that once the brother's decedent estate was finalized, they would remarry. Therefore, Strength testified that the divorce was a mere ploy to protect his assets from his brother's creditors.

While Brock did not dispute Strength's account of the circumstances leading to their divorce, she suggested that other causes led to the couple's split, including spousal abuse.

The parties did continue to live together in the home until the divorce became final. Once the divorce was final, however, Brock demanded that Strength leave the residence.

Sometime after the parties' divorce, Strength filed another petition for divorce in the same Circuit Court. His logic in filing the second petition was that the first petition for divorce, the one finalized on October 18, 2010, had been a sham. The Circuit Court, however, denied and dismissed this second divorce petition. That decision was subsequently affirmed by the Alabama Court of Civil Appeals.

Then in 2012, Brock commenced an action in the Circuit Court seeking to hold Strength in contempt for his failure to pay the mortgage notes on her Juniper Court home. The Circuit Court, however, denied Brock's motion reasoning that the obligation was a property settlement not enforceable by contempt proceedings. Instead, the court awarded Brock a money judgment for Strength's breach of the

property settlement agreement. *See* Debtor's Exhibit A.

II. Other Relevant Facts

Brock's income consists of $600 each month that she receives in the form of child support from a former marriage; one prior to that with Strength. In addition to those funds, the same former husband, with whom Brock has children, contributes approximately $700 each month for "extras" for the children.

By contrast, Strength is a highly paid medical professional. No evidence was presented at trial detailing Strength's earnings, but his income, as set out in the bankruptcy schedules, is a net of $21,431 per month. *See* Schedule I - Current Income of Individual Debtor.

The Brock/Strength marriage did not produce children. However, both Brock and Strength have children from prior marriages. Brock has three children, but only one of those currently resides with her at the Juniper Court home.

Conclusions of Law

In a chapter 13 case, a debt for a domestic support obligation is not dischargeable. *See* 11 U.S.C. § 1328(a)(5). A debt qualifies as a domestic support obligation if, *inter alia*, it is in the nature of alimony, maintenance, or support of such spouse, former spouse, or child of the debtor. *See* 11 U.S.C. § 101(14A)(B). Conversely, it follows that a claim arising out of a divorce which is in the nature of a property settlement is dischargeable in a chapter 13 case provided that the debtor completes plan payments and receives a discharge under § 1328(a).

However, if the debtor is unable to complete the plan but is able to obtain a discharge under the hardship provisions of § 1328(b), debts arising from a divorce proceeding are not dischargeable regardless of whether they are in the nature of support or of a property settlement. *See* 11 U.S.C. § 1328(c) which incorporates 11 U.S.C. § 523(a)(15) into the list of nondischargeable debts under the hardship discharge scenario.

At issue here is whether Strength's obligation to Brock was in the nature of alimony/support or of a property settlement. First, the court must determine whether the doctrine of collateral estoppel, or issue preclusion as it is now more commonly called, precludes reconsideration of the issue altogether. "Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior

action. The principles of collateral estoppel apply to discharge exception proceedings in bankruptcy court." *Bush v. Balfour Beatty Bahamas, Limited (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995)(citing *Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991)).

In determining whether a prior judgment has collateral estoppel effect, the bankruptcy court must apply the law of the court issuing the prior judgment. *See Bush,* supra at 1323 n. 6 (applying federal law to determine whether prior federal judgment had preclusive effect but noting that the preclusive effect of a prior state court judgment would be determined under the law of that state).

Under Alabama law,

> [c]ollateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action. Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment....... If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit.

*Wheeler v. First Alabama Bank of Birmingham, et al*, 364 So.2d 1190, 1199 (Ala. 1978); *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 726 (Ala. 1990).

The prior proceeding in question here is the motion filed by Ms. Brock in the Circuit Court seeking to have Strength held in contempt of court for his failure to pay the two notes secured by mortgages on her Juniper Court home. At issue in that action was whether Strength's obligation to pay those notes was alimony/support or a property settlement. The alimony/support versus property settlement distinction was essential to the Circuit Court action because only a breach of an obligation to pay alimony/support is enforceable by contempt proceedings. The Circuit Court found that Strength's obligation was a property division, not alimony/support, and therefore, was not enforceable through a contempt proceeding.

Hence, the issue presented in the Circuit Court, whether Strength's obligation to Brock was for alimony/support or a property settlement, is identical to the issue presented in the discharge objection now before this court. Further, that issue was actually litigated in the Circuit Court, and the resolution of the issue was necessary to the prior judgment. The elements of collateral estoppel are

satisfied and the Circuit Court's judgment on that issue is preclusive. This court is estopped from reconsidering the issue.

Even if the issue was not precluded by collateral estoppel principles, the court, applying the applicable law, would reach the same conclusion as did the Circuit Court.

The determination of whether a debt is a support obligation or a property settlement is governed by federal rather than state law. *In re Harrell*, 754 F.2d 902, 905 (11th Cir. 1985). "A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony." *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001)(citations omitted).

Here, the preponderant weight of the evidence leads the court to conclude that Strength's transfer of the Juniper Court property and his obligation to pay the debts thereon were meant to insulate those assets from creditors' claims and not to support Brock. Both parties testified as to their intent at the time of the divorce and Strength's account of the contrived divorce was not refuted by any evidence offered by Brock. The contrived divorce is made all the more believable by the fact that Strength continued to reside in the Juniper Court home with Brock until the divorce became final, and only then did she ask him to leave. Thus, the court finds that the parties' subjective intent was to create a property transfer obligation and not a support arrangement.

Yet, courts employ other factors to aid it in determining the parties' subjective intent regarding alimony versus property division. The court must look to the substance of the obligation rather than to its label or form given it by the divorce decree or the parties stipulations. *Ackley v. Ackley*, 187 B.R. 24, 26 (N.D. Ga. 1995); *Bedingfield v. Bedingfield (In re Bedingfield)*, 42 B.R. 641, 645 (S.D. Ga. 1983). Nevertheless, state law may aid in making this determination. *Hughes v. Hughes (In re Hughes)*, 16 B.R. 90, 92 (Bankr. N.D. Ala. 1981).

Courts consider a number of other factors in classifying obligations as alimony or property divisions:

> 1) whether applicable state law would deem the obligation to be alimony or property settlement; 2) whether the obligation ends upon the happening of contingencies, such as remarriage; 3) whether the payments are periodic or lump sum; 4) whether the obligation was

constructed to reduce the disparities in the parties' relative earning power; 5) whether the spouse is directly or indirectly benefitted by the payment; and 6) whether the parties have minor children whose support is in question.

*English v. English (In re English)*, 99-13129-WSS (Bankr. S.D. Ala. July, 2001)(citations omitted).

In this case, the parties denominated the transfer of the Juniper Court property as a "[p]roperty division" in their stipulation which was made a part of their final divorce. While the label given is not dispositive, it is a factor to consider and here falls on the side of the transfer being a property settlement.

Further, state law would deem this transfer to be a property settlement. First, the obligation to pay the Juniper Court mortgages was not modifiable. Strength was obligated to pay these notes until they were paid off. He could not seek subsequent modification of that obligation. Under Alabama law, alimony is modifiable while a property settlement is not. *See Delaine v. Delaine (In re Delaine)*, 56 B.R. 460, 466 (Bankr. N.D. Ala. 1985); *Hager v. Hager,* 299 So.2d 743, 749 (1974). Hence, state law would deem the obligation to be a property settlement.

Secondly, Strength's obligation to pay the Juniper Court notes did not cease upon the happening of any contingency. His obligation to pay was not dependent upon any condition subsequent but rather had vested in Mrs. Brock. Therefore, under state law, the obligation would be construed as a property settlement. *See Delaine v. Delaine,* 56 at 467; *McEntire v. McEntire,* 345 So.2d 316, 319 (Ala. Civ. App. 1977).

In this case there are no children of the marriage whose support is in question. In such instances, the transfers and obligations are construed as property settlements instead of alimony.

Although there is a sizeable disparity in the incomes of Brock and Strength, this court is not of the view that these transfers of Strength's property to Brock were designed to remedy that disparity in their respective earning power. Yet, this factor would favor labeling the obligation as alimony.

Nevertheless, considering all these factors leads the court to conclude that the parties' intent as of the time of its making was that the obligation be in the

nature of a property settlement and not periodic alimony for Brock's support.

## Conclusion

For the foregoing reasons, the court finds that Strength's obligation to pay the mortgages on the Juniper Court realty was a property settlement and not alimony. Therefore, it follows that the obligation is dischargeable should Strength complete his plan and receive a discharge under 11 U.S.C. § 1328(a). However, should Strength not complete his plan but receive a hardship discharge under 11 U.S.C. § 1328(b), any unpaid part of the claim arising from these parties' divorce will be nondischargeable. Therefore, a separate order will enter overruling Brock's motion to hold her claim nondischargeable if a § 1328(a) discharge ensues, and granting the motion in the event Strength is discharged under § 1328(b).

Done this the 26th day of February, 2013.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Mark Hampton Baxley, Brock's Attorney
   Rafael Gil, III., Strength's Attorney
   Curtis Reding, Trustee